UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

VONELL LAVELL SHAW,

        Plaintiff,

       v.                                             Case No. 24-cv-1029-bhl

TONIA ROZMARYNOSKI,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      Plaintiff Vonell Lavell Shaw, an inmate at the Green Bay Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment claim based on allegations that Defendant Tonia Rozmarynoski was deliberately indifferent to the risk of substantial harm that he posed to himself. On December 19, 2025, Rozmarynoski moved for summary judgment. For the reasons explained below, the Court will grant the motion and dismiss this case.

### BACKGROUND

      At the relevant time, Shaw was incarcerated at the Green Bay Correctional Institution, where Rozmarynoski worked as a supervising officer. On June 28, 2024, she was called to Shaw's cell for reports that he was self-harming by cutting himself. At the time, Shaw was on clinical observation status, during which he was observed every 15 minutes because he was determined to be a danger to himself or others. When Rozmarynoski arrived at his cell, Shaw was engaged in a disagreement with the prison psychologist and knocking his head against his cell door window. He stopped shortly after Rozmarynoski arrived. She succeeded in convincing Shaw to hand over a silver object that he was trying to use to cut himself. The object turned out to be a silver gum wrapper that Shaw had tightly folded to create a sharp edge. Dkt. Nos. 62, 73 at ¶¶1-4, 7, 10-14.

      Shaw was then removed from his cell and taken to the health services unit to be evaluated by a nurse. Rozmarynoski stayed at Shaw's cell to direct another officer searching the cell.

Rozmarynoski then went to speak with the prison psychologist, during which time she turned off her body camera to protect Shaw's privacy. Meanwhile, Shaw was taken from the health services unit to an empty holding cell so he could be strip-searched before being returned to his cell. He resumed his headbanging in this holding cell.

Rozmarynoski arrived and began to instruct officers on changes to the strip-search procedures. When staff approached the door to begin the strip search, Shaw began knocking his head against the door's window, generating a series of loud banging noises. He was not bleeding or disoriented. Rozmarynoski told him to stop, but he ignored her. She then instructed an officer to remain by the door, and she left to update the psychologist. Based on Shaw's behavior, the psychologist ordered that Shaw be placed in bed restraints rather than returned to his cell. Dkt. Nos. 62, 73 at ¶¶15-28.

Rozmarynoski returned to the cell where Shaw was waiting. He was passively standing by the door, looking out the window. Rozmarynoski asked Shaw if he would comply with a strip search. In response, he began to knock his head against the door window. Rozmarynoski radioed for staff to report to the cell. Shaw asked Rozmarynoski a question, to which she responded "absolutely not." Shaw challenged Rozmarynoski about her response, claiming that she said she did not care that he was banging his head against the door. Rozmarynoski clarified that she thought he had asked if she wanted him to bang his head. She then told Shaw she was not going to play word games with him. Dkt. Nos. 62, 73 at ¶¶29-31.

Shaw eventually complied with the strip search. Rozmarynoski stood about ten feet down the hallway and observed the officer conducting the search. She also entered the room with the bed restraints a couple of times to confirm the bed was ready. Shaw was removed from the holding cell and placed in the bed restraints without further incident. He repeatedly asked Rozmarynoski to make sure she recorded in her incident report that she had said she did not care that he was banging his head against the door. Dkt. Nos. 62, 73 at ¶¶32-43.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could

2

Case 2:24-cv-01029-BHL    Filed 02/17/26    Page 2 of 6    Document 75

return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

Shaw is proceeding on a claim that Rozmarynoski violated his Eighth Amendment right not to be subjected to cruel and unusual punishment. The Supreme Court has confirmed that the Eighth Amendment also places an affirmative duty on prison officials to protect prison inmates from harm. In this context, a prison official violates the Eighth Amendment if he or she is aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregards it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Notwithstanding the fact that deliberately causing harm to oneself would normally constitute a superseding or intervening cause of injury, *see Taylor v. Wausau Underwriters Ins. Co*., 423 F. Supp. 2d 882, 888–89, 900 (E.D. Wis. 2006), the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018).

Shaw's claim is that Rozmarynoski was deliberately indifferent to the risk of serious harm that he posed to himself when she walked away from his cell while he was banging his head on the window. The Seventh Circuit has repeatedly "recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need." *Miranda*, 900 at 349. Claims of this sort have become somewhat commonplace— Shaw himself has filed three cases alleging deliberate indifference to his self-harming actions.[1] It appears that the opportunity to hold correctional officers liable for a deliberate decision to harm oneself may have created a perverse incentive for some litigious and manipulative inmates to

---

[1] In addition to this case, Shaw filed *Shaw v. Hoffstatter*, Case No. 23-cv-1272-bhl and *Shaw v. Green*, Case No. 25-1946-bhl, both of which allege deliberate indifference to threats and/or acts of self-harm.

3

engage in the very thing that allowing these claims seeks to prevent. *See Goodvine v. VandeWalle*, No. 16-C-890, 2018 WL 460121, **7, 9 (E.D. Wis. Jan. 17, 2018) ("Goodvine admitted in the course of his testimony that he has successfully sued jail and/or correctional officers on a number of previous occasions for failing to prevent him from harming himself and related claims, and has recovered at least $25,000 in settlements with the State."). Despite this obvious opportunity for abuse, the rule imposing liability on correctional officers for deliberate indifference to the risk of a prisoner seriously harming himself is well-established, and it is that law on which Shaw's claim is based.

As Shaw is aware, not every claim that a prisoner did not receive adequate protection will succeed. *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019); *Shaw v. Hoffstatter*, Case No. 23-cv-1272-bhl (E.D. Wis. Nov. 12, 2024) (granting summary judgment for defendants based on video that showed correctional officers going to great lengths to keep Shaw safe from himself). To prevail on such a claim, a plaintiff must provide evidence showing that the defendants (1) were aware of an objectively serious risk of harm to him; and (2) knowingly or recklessly disregarded it. *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (citations omitted). Shaw's claim against Rozmarynoski fails on both prongs.

As to the first prong, Shaw asserts that he faced an objectively serious risk of harm when he repeatedly knocked his head against the door instead of complying with officers' orders. No jury could reasonably conclude that Shaw posed a risk of serious harm to himself. Shaw claims that he was "banging his head severely hard" while Rozmarynoski observed that he "did not appear to be banging his head very hard." Dkt. No. 62, 73 at ¶¶23. The parties' competing characterizations are resolved by the video captured by Rozmarynoski's body camera, which demonstrates her remarkably patient and reasonable handling of the episode. *See* Dkt. No. 64-1, 64-6, 64-12 (videos available for viewing in the clerk's office); *see Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (explaining that video that is so definitive that there is no reasonable disagreement about what it depicts can eviscerate a factual dispute).

To emphasize his disagreement with the orders he was being given, Shaw, who was standing less than a foot from his door, leaned forward and repeatedly banged his head on the door. Shaw may have given himself a bruise or abrasion and perhaps a headache, but, after watching the video, no jury could reasonably conclude that the force with which he banged his head against the door posed a substantial risk of *serious harm* to his health and safety. Shaw talked normally to

4

officers after he stopped banging his head and showed no signs of delirium, confusion, or physical injury. To the contrary, he was thinking clearly enough to lay the groundwork for this lawsuit by repeatedly asking Rozmarynoski to prepare an incident report concerning the situation, a situation he was responsible for creating. It is clear from the video that Shaw was in control of his actions and had the capacity to stop harming himself whenever he decided to do so. In other words, this is not a circumstance where a prisoner posed a substantial risk of harm to himself because he had "giv[en] way to the unusual psychological strain caused by incarceration." *Miranda*, 900 F.3d at 349. Instead, the video shows that Shaw was acting out to try to manipulate corrections officers to get his own way, "not unlike a young child who threatens to hold his breath until his parents give him what he wants." *Hewlett v. Staniec*, Case No. 25-C-735 (E.D. Wis. May 27, 2025). It is not cruel and unusual punishment, and the Eighth Amendment is not violated, when a prison official reasonably and professionally responds to an inmate's deliberate misbehavior, including intentional attempts at self-harm. Shaw cannot use his own volitional actions to impose liability against prison officials for their reasonable responses to his misconduct.

        Shaw also fails to create a triable issue on the second prong of the standard. Shaw asserts that Rozmarynoski showed deliberate indifference to his self-harming actions when she walked away while he was banging his head. But the undisputed evidence shows that she walked away only after directing an officer to stay by Shaw's cell so any escalation in Shaw's behavior could be immediately addressed. Moreover, she walked away not because she was indifferent to Shaw's self-harming behavior, but because she wanted to update the psychologist about the change in his behavior. Her decision to bring Shaw's behavior to the psychologist's attention is the opposite of indifference. The undisputed evidence also shows that, the second time Shaw began to bang his head against the door, Rozmarynoski immediately radioed for officers to come to his cell. She then respectfully explained to Shaw what needed to happen before he could be placed in bed restraints. Shaw was upset about Rozmarynoski's response to a comment he made, but the video makes clear that she responded the way she did because she misheard his original comment. Once Shaw explained what he had said, she quickly clarified her response. In short, the evidence shows that Rozmarynoski acted with professionalism and went to great lengths to care for Shaw despite his initial refusals to cooperate. No jury could reasonably conclude that she demonstrated deliberate indifference to Shaw's well-being at any point during her interactions with him. Rozmarynoski is therefore entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Rozmarynoski's motion for summary judgment (Dkt. No. 60) is **GRANTED** and this action is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of February, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.